ESTHER H. VAN INWEGEN, PLAINTIFF-RESPONDENT, v. H. BARENTSEN VAN INWEGEN, DEFENDANT-APPEL-LANT.

Argued January 23, 1950—Decided February 14, 1950.

*Mr. Adrian M. Unger* argued the cause for the appellant (*Messrs. Milton M.* and *Adrian M. Unger,* attorneys).

*Mr. Isadore Glauberman* argued the cause for the respondent (*Messrs. Mackerley & Friedman,* attorneys).

The opinion of the court was delivered by

BURLING, J. This is an appeal by the defendant from a final decree entered in the former Court of Chancery on July 2, 1948, in favor of the plaintiff in the amount of $11,725 upon a complaint for an accounting of moneys allegedly loaned by the plaintiff to the defendant. The appeal was originally filed with the Appellate Division of the Superior Court but was certified by this Court. The parties are husband and wife. They were married April 13, 1946, after a short courtship resulting from a renewal, in the latter part of 1945, of a former friendship. At the time of the marriage the plaintiff was a widow, 61 years old; the defendant was

a bachelor, about 58 years old. The plaintiff owned a home in Milford, Pennsylvania, known as Patch House which she had recently purchased, and was possessed of certain moneys received from her former husband's estate. The defendant was the owner of a farm in Montague Township, Sussex County, New Jersey, known as Old House, subject to a $4,500 mortgage. The value of the farm is not disclosed. It is conceded that the defendant had no money of his own and was having financial difficulty in operating his farm. After the marriage the parties took up their residence at Old House where they lived together until August 26, 1947. On April 15, 1946, a joint bank account was opened at the Bank of Matamoras, Matamoras, Pennsylvania, by adding the plaintiff's name to an account previously opened by the defendant with moneys advanced to him by the plaintiff prior to the marriage. From time to time checks were drawn by the plaintiff upon her own accounts in the First National Bank of Milford, in Pennsylvania, and the Chemical National Bank and Trust Company of New York City, and deposited in the joint account. Disbursements were made from the joint account for various items of expense including improvements to Old House and Patch House, current housekeeping, entertainment, medical and personal expenses. Most of the checks disbursing the funds in the joint account were drawn by the defendant. The parties separated August 26, 1947, and in October, 1947, the plaintiff instituted the present suit alleging that advances were made by her to the defendant constituting loans in the amount of $15,925 and demanded that the defendant account for such moneys and pay to the plaintiff the amount found to be due on such accounting. At the hearing, claims of three additional loans, aggregating $2,850, were added to the complaint. Of this latter amount, the sum of $1,350 was acknowledged by the plaintiff to have been used for the purchase of a tractor in her name and was not a loan. It thus appears that a total of $17,425 is alleged by the plaintiff to have been loaned by her to the defendant. The defendant denied that any of the moneys advanced by the plaintiff were intended to be loans but con-

tended on the contrary that there was no understanding that the moneys so advanced were to be repaid and that the moneys were disbursed by him for the common welfare of the parties. He also denied that a note in the sum of $2,300, dated April 29, 1946, bearing the legend "Representing sums invested in Old House" and made by him to the plaintiff evidenced a loan but said that it was given to the plaintiff as a token and that when he delivered the note to her he used the following language: "I want you to have a note as a token note to have and to hold in case anything happens to me like death, you have something quickly to convert into cash instead of waiting for the estate to be settled." It was not explained, however, in what manner a quick conversion into cash was to be realized since the defendant's only asset was the farm property encumbered by a mortgage.

The former Vice-Chancellor, after hearing the testimony, and without benefit of a formal accounting, concluded that while some of the moneys advanced by the plaintiff were used for food and entertainment as well as for the maintenance of the plaintiff's house in Pennsylvania, the major part of the money so advanced represented loans for the improvement and maintenance of the property of the defendant and for the payment of the latter's indebtedness to other parties. A decree was thereupon entered against the defendant in the sum of $11,725. The present appeal is by the defendant whose major contention is that the trial court erred as a matter of law in failing to find that the moneys advanced by the plaintiff were gifts since they were used with the consent and approval of the plaintiff and there was no agreement for reimbursement.

While the basic legal question appears to be clearly defined, we find it is presently impossible to adjudicate the merits of the controversy because of the dearth of factual information in the record and particularly the detailed circumstances of the several advances and the specific purposes and amounts of the expenditures. A thorough presentation of the facts is a *sine qua non* to a final determination of the issue involved. The application of the legal principles can

be made only after a complete disclosure of the facts. Accordingly, we are disposed to reverse the decree and remand the case for a trial *de novo* which should include a comprehensive accounting. For the guidance of the trial court we submit the legal principles which we conceive to be applicable.

At common law a wife's personal property vested in her husband when reduced to possession by him. *Horner v. Webster*, 33 *N. J. L.* 387 (*E. & A.* 1867), 2 Bl. *Comm.* 434; *Thornton, Gifts and Advancements* (1893), *p.* 210, § 242; *Madden, Domestic Relations* (1931), *p.* 83, § 28. Moreover, formerly, upon the coverture theory, a husband's contract with his wife was an absolute nullity, *Lister v. Lister*, 86 *N. J. Eq.* 30 (*Ch.* 1916); 3 *Story, Equity Juris.* 14*th Ed.* (1918), *p.* 405, § 1799; 41 *C. J. S., Husband and Wife, p.* 599, § 128; and his promise to refund money borrowed from his wife was *nudum pactum, Schouler, Domestic Relations, 6th Ed.* (1921), *p.* 552, § 542.

With the advent of the Married Women's Acts, the first of which was passed in this State in 1852 (*P. L.* 1852, *p.* 407) the former rights of a husband to his wife's property were extinguished, *Vreeland v. Vreeland Admr.*, 16 *N. J. Eq.* 512 (*Prerog.* 1863). Subsequent legislation (*R. S.* 37:2–1 *et seq.*) has given a wife wider latitude in dealing with her separate estate. In *Lister v. Lister, supra,* it is pertinently said, at page 48:

"It would perhaps clear up this subject of the status of so-called contracts between man and wife if such transactions were not regarded as contracts even *sub modo*. A contract between a man and wife void at law may be deemed in equity as mere conduct—a mere transaction out of which arise equitable rights and equitable duties."

Transactions between husband and wife, by reason of the confidential relationship, are closely scrutinized, 3 *Pomeroy, 5th Ed., p.* 853, § 962 b; and gifts by a wife to her husband are examined "with an anxious watchfulness and caution and dread of undue influence." 3 *Story, supra, p.* 425, § 1825. See also *Schouler, supra, p.* 566, § 553.

It has long been established in this State that where a wife advances money from the principal of her separate

estate to her husband there is no presumption that such a transaction constituted a gift; on the contrary, the presumption is that the advancement is a loan or a deposit for safe-keeping and the burden of proving the transaction by a preponderance of the evidence to be a gift is upon the husband or the person who asserts it to be a gift. *Cole v. Lee,* 45 *N. J. Eq.* 779 (*E. & A.* 1889); *Adoue v. Spencer,* 62 *N. J. Eq.* 782 (*E. & A.* 1900); *Brady v. Brady,* 58 *A.* 932 (*Ch.* 1904); *Elmer v. Trenton Trust and Safe Deposit Co.,* 76 *N. J. Eq.* 452 (*Ch.* 1909); *Riker v. Riker,* 83 *N. J. Eq.* 198 (*Ch.* 1914); affirmed, 83 *N. J. Eq.* 693 (*E. & A.* 1914); *Reed v. Tilton,* 90 *N. J. Eq.* 42 (*Ch.* 1919); *Yorn v. Yorn,* 139 *N. J. Eq.* 300 (*E. & A.* 1946).

██ Interest is not chargeable against a husband during the continuance of the marriage relation on loans made to him by his wife, in the absence of an agreement therefor. *Collins v. Babbit,* 67 *N. J. Eq.* 165 (*Ch.* 1904); *Riker v. Riker, supra; Quinlan v. Quinlan,* 119 *N. J. Eq.* 94 (*E. & A.* 1935); *Bahr v. Cooper,* 141 *N. J. Eq.* 584 (*Ch.* 1948).

██ The rule appears to be equally established that where a husband receives the rents and income, as distinguished from the principal, of his wife's separate estate and expends it with her knowledge and without her dissent, there is acquiescence from which a gift will be presumed. *Horner v. Webster, supra; Adoue v. Spencer, supra; Elmer v. Trenton Trust & Safe Deposit Co., supra.* See also *Thornton, supra,* § 243, and *Lush, Husband and Wife, 4th Ed.* (1933), *p.* 156. The evidence in the instant case is not clear as to whether any part of the moneys advanced by the wife were from rents and income or whether they were all from the principal of her separate estate.

██ Moreover, advances by the wife for use in the payment of ordinary current family expenses, during the time the parties are living together as husband and wife, are not recoverable in the absence of an agreement for reimbursement. *Pieretti v. Seigling,* 134 *N. J. Eq.* 105 (*Ch.* 1943); *Spalding v. Spalding,* 361 *Ill.* 387, 198 *N. E.* 136 (*Ill. Sup. Ct.* 1935), 101 *A. L. R.* 433; *Anno.* 101 *A. L. R.* 442. It appears that

some of the moneys advanced by the wife in the case *sub judice* were used for current family expenses but such amounts are not sufficiently identified in the present record.

The decree is reversed and the matter is remanded to the Chancery Division of the Superior Court for a trial *de novo* which should include a comprehensive accounting in conformity with the principles herein stated.

*For reversal*—Chief Justice VANDERBILT, and Justices WACHENFELD, BURLING and ACKERSON—4.

*For affirmance*—Justices CASE and HEHER—2.