59 N.J. Super. 502 (1960)
158 A.2d 189
JUNE LADDEN, PLAINTIFF-RESPONDENT,
v.
MATTHEW L. LADDEN, LADDEN ASBESTOS CORP., A CORPORATION OF NEW YORK, BLUE SEAL ASBESTOS CORPORATION, A CORPORATION OF NEW YORK, AND LADDEN ASBESTOS CORPORATION OF NEW JERSEY, A CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1959.
Decided February 18, 1960.
*503 Before Judges GAULKIN, SULLIVAN and FOLEY.
*504 Mr. Abraham Brenman argued the cause for plaintiff-respondent (Messrs. Brenman and Susser, attorneys; Mr. Nelson F. Stamler and Mr. Martin N. Piper, on the brief).
Mr. Alfred C. Clapp argued the cause for defendants-appellants.
The opinion of the court was delivered by SULLIVAN, J.A.D.
This is an appeal in a matrimonial action in which plaintiff, the wife of defendant Matthew L. Ladden, sued her husband and three business corporations which he owned. The first count of the complaint asked for separate maintenance from the husband, for the support of plaintiff and two children then living with her. The second count, against the corporate defendants, sought the recovery of salary earned by plaintiff as an employee but never paid to her. The third count charged defendant husband with taking the aforesaid salary due plaintiff and using the funds for his own purposes. In the fourth count it was alleged that defendant husband fraudulently induced plaintiff to turn over to him her twenty-five per cent stock interest in one of defendant corporations. The return of the stock was sought.
The trial was lengthy and bitterly contested. At the conclusion thereof the court awarded plaintiff separate maintenance for the support of herself and a daughter living with her, the other daughter having decided to live with her father after the commencement of the suit. On the second and third counts, involving the salary claim, the court found for plaintiff and entered a judgment of $25,000 in her favor against all defendants. As to the fourth count, for the corporate stock, the court dismissed plaintiff's claim. The judgment allowed a counsel fee of $4,000 to the attorneys for plaintiff for services rendered in connection with the matrimonial issue. Thereafter the court made additional allowances of $350 and $500 to plaintiff's attorneys for services rendered in the cause subsequent to the entry of judgment.
*505 Plaintiff has not appealed from any part of the court's ruling. All of the defendants have appealed from that part of the judgment awarding plaintiff $25,000 on the second and third counts. Defendant husband also appeals from the allowance of the $4,000, $350 and $500 counsel fees.
The parties were married in 1931. The union seems to have been happy enough in the beginning and produced three children. The oldest, a son, is married and has his own home. He works for his father. The two daughters attend school.
Plaintiff as well as her husband was employed for the first few years of the marriage. During that period of time their income was pooled to pay living expenses. She gave up her employment prior to the birth of her first child in 1935, and thereafter her husband was the sole support of the family. About 1944 Mr. Ladden decided to go in business for himself, and organized Ladden Asbestos Corporation with borrowed money. Plaintiff came to work in the corporation office in 1946 and stayed until May 1955. In the beginning it was a "one-girl office" with plaintiff attending to numerous duties. As the business expanded an office staff was added and plaintiff's work became supervisory or executive in character. Her salary reflected the situation. In the beginning it was modest but was increased from time to time until her earnings reached $200 or more weekly. It was stipulated that over the period of time involved, 1946 to May 1955, plaintiff's earnings were approximately $75,000.
Plaintiff claims that none of the salary was ever paid to her, and that her husband appropriated all of it. Mr. Ladden denies this. The trial court made no finding thereon but it is unnecessary to resolve the precise issue because, no matter how the money came to Mr. Ladden, it is obvious that it was with plaintiff's knowledge and consent. From 1946 to 1952 her salary went into a joint bank account on which she could, and did, draw checks. If she had any objection to the receipt of her salary by her husband she could have taken or used the money as she saw fit. She *506 also could have terminated her employment if she did not approve of the situation. On the contrary she continued to work, acquiesced in Mr. Ladden's course of conduct and, together with her husband, signed yearly joint federal income tax returns acknowledging receipt of the salary.
The crux of this appeal is whether or not plaintiff can compel her husband to account to her for this money. This in turn depends on the nature of the arrangement between the parties. Was it a gift or a loan? Was her salary made available to her husband under some agreement that he was to use it for specified purposes only, or was it just turned over to him or taken by him without any agreement at all as to its use or disposition?
It is settled law in this State that when a wife turns her income over to her husband who spends it with her knowledge and without objection on her part, a gift will be presumed. Van Inwegen v. Van Inwegen, 4 N.J. 46 (1950). In Jones v. Davenport, 44 N.J. Eq. 33, 47 (Ch. 1888), the court commented on this type of situation as follows:
"A wife, by permitting her husband to take her income and make such use of it as he sees fit, induces him to live in a style much more expensive than he otherwise would. He spends more for her, and gives her more to spend than he would if she required him to pay her income over to her. And she gets just as much benefit, as a general rule, from his increased expenditures as he does. It would, in many cases, not only be extremely unjust, but ruinous, if the wife could, after years of silence, call upon her husband to return to her everything he had received for her. A rule which permitted her to do so would very greatly multiply the hazards of business, and serve as a new encouragement to fraud."
In order to avoid the application of this presumptive rule, it was incumbent on plaintiff to establish that the arrangement was otherwise.
"An appropriation by a wife, herself, of her separate property to the use and benefit of her husband, in the absence of an agreement to repay, or any circumstances from which such an agreement can be inferred, will not create the relation of debtor and creditor nor render the husband liable to account." *507 Black v. Black, 30 N.J. Eq. 215, 219 (Ch. 1878), modified 31 N.J. Eq. 798 (E. & A. 1879).
In the present case the court did not make any finding as to what agreement, if any, the parties had as to plaintiff's salary. In announcing his decision, however, the trial judge stated that it would be unfair to plaintiff to apply the rule set forth in Van Inwegen because that "would be in effect to leave the defendant in a position where he had control of everything  the house, the corporation, the stock, et cetera, all of which he acquired with the work and efforts of Mrs. Ladden, which would leave her, after many years of toil, on the outside looking in."
The judge also observed that it would be unfair to the husband to apply the rule that a wife's income belongs to her as her separate property and to compel him to pay back all of the money, since the joint incomes had resulted in Mrs. Ladden's and her children's enjoying a better station in life. The end result was that the trial judge more or less combined the two rules and held that Mr. Ladden did not have to account for any of the moneys spent for household expenses and maintenance of the family, but was accountable for all other money. The court then determined that plaintiff should be reimbursed in the amount of $25,000, but did not indicate how it arrived at that figure. The court also directed "that the judgment be against all the defendants, so that there will be no question about it."
We do not agree with this ruling. There was no legal basis for any judgment against the corporations. As to the husband, there is not the slightest evidence indicating that plaintiff made her salary available to him under an agreement that he would return it to plaintiff or be accountable for it, or that it was to be used for limited purposes only. Indeed, the indication is that there was no particular understanding with reference to this money other than that the husband simply combined it with his own funds and used it as he saw fit. The parties had done the same thing when *508 they were first married and plaintiff had never claimed that her husband was accountable for her salary spent at that time.
Mr. Ladden testified that the joint moneys were used for household expenses, education of the children and similar living costs. It is unquestioned that the parties lived on a luxurious scale. At the time of the separation they occupied an 18-room home on a seven-acre estate in Morris County. This property, by the way, had been purchased in the name of one of the corporations and leased to Mr. Ladden. The furnishings of the house, which were paid for by the corporation, were selected by plaintiff at a cost of $90,000. A staff of two full-time and two part-time servants took care of the household. The grounds required gardening and maintenance. The children attended private schools and colleges.
It appears that not all of the money was spent in living expenses. Mr. Ladden also used available funds to broaden and improve his business interests. Plaintiff stated that on two or three occasions she asked for the money "when huge expenditures were being made" by her husband for business purposes, but he said "no." This assertion is hard to reconcile with her continuing to work several years thereafter under the same arrangement.
Plaintiff also urges that the presumption of a gift does not apply to her situation because the evidence shows that certain essential elements of a gift, to wit, freedom of will, donative intent and irrevocable delivery to the donee, were not present. She claims that her husband unrelentingly and tyrannically dominated and completely controlled and influenced her. The proof, however, is otherwise. Mr. Ladden may have been the head of the household, as most husbands are. There is no indication though that he was taking and using her money without her free consent. Mrs. Ladden, by her own admission, was a "top level executive." The entire record indicates that she was anything but passively subject to her husband. As a matter of fact, when their personal differences reached the point of a separation, it was Mr. *509 Ladden who was obliged to yield and move out of the family home. Except for her uncorroborated statement that she had asked for the money on two or three occasions, the evidence shows that she willingly went along with and enjoyed the fruits of her husband's handling of the finances. There is nothing to show that she ever had or claimed to have a separate estate of her own.
Plaintiff also sees a lack of donative intent and irrevocable delivery on her part, because up until 1952 her salary was deposited in a joint bank account on which she had the power to and did draw checks. This proves nothing. The fact is that plaintiff's husband did use the money and the joint account was closed in December 1952. Thereafter, plaintiff's salary was deposited in the husband's personal bank account.
It can be argued that while plaintiff may have had no specific arrangement with her husband over the use to which her earnings were to be put, the reason was that they were then a happily married couple and plaintiff had no reason to expect that a time would come when the legal consequences of her donation to her husband would have to be considered. There is some hardship on the wife in this type of situation, but in the nature of things, her disappointment cannot be given legal status. This contention was made in Pieretti v. Seigling, 134 N.J. Eq. 105 (Ch. 1943), and rejected by the court on the ground that even between husbands and wives, there must be finality to actions once taken.
In the present case it seems clear that, if the unfortunate matrimonial dispute had not come into being, plaintiff would never have asserted her present claim for an accounting from her husband. Her situation, moreover, is not without some advantage. While she may not have the security of a separate estate of her own, she is entitled to adequate support and maintenance from her husband and can look to his resources for satisfaction thereof. Cf. Flicker v. Chenitz, 55 N.J. Super. 273, 284 (App. Div. 1959).
Our conclusion that over the years plaintiff made an irrevocable donation of her salary to her husband is dispositive *510 of the entire question and makes it unnecessary to consider how the money was spent. Plaintiff's assertion in her brief that the rule of presumptive gift set forth in Van Inwegen is limited to expenditures for household purposes is not correct. In the absence of any agreement or understanding that the money is to be used for specific purposes only, the presumption of gift applies no matter how the husband expends the money so long as he does so with his wife's knowledge and acquiescence.
As was said in Williams v. Williams, 146 Tenn. 1, 236 S.W. 926, 931 (Sup. Ct. 1922):
"It is immaterial to what uses the husband expends his wife's income if it be done with her knowledge, consent, and acquiescence, particularly when it has been expended without any expectation or understanding that he would have to account for it, and when the expenditures have been made through a long period of years under circumstances indicating that the wife did not expect an accounting."
The judgment for $25,000 against the defendants must be set aside and a judgment entered in their favor on the second and third counts.
No appeal has been taken by plaintiff from the judgment awarding her separate maintenance in the sum of $100 weekly, plus use of the home in Convent Station. The trial court, however, set this figure at the same time it awarded plaintiff $25,000, and under the assumption that she would have this capital fund in addition to the support payments. This ruling therefore is without prejudice to the right of plaintiff to petition for an increase in her weekly support payments.
On the matter of counsel fees, it is undisputed that plaintiff's attorney is entitled to be compensated only for services rendered in connection with the matrimonial issues in the case. R.R. 4:55-7(a). This matter extended over a period of some 13 court days, but the greater part of the litigation was over non-matrimonial issues. Allowances to counsel are ordinarily matters for the discretion of the trial judge, but we have the duty to adjust those that are manifestly *511 excessive. In the light of the foregoing we find that the $4,000 allowance to plaintiff's attorney should be reduced to $2,500. We also find that the post-trial work by plaintiff's attorney involved matrimonial issues and allowances were properly made therefor. Considering the work, though, the amounts of $350 and $500 are too high and should be reduced to $250 each.
Remanded for disposition pursuant to this opinion.