Anthony Felise v. Commissioner.
Felise v. Comm'r
Docket No. 527-65.
United States Tax Court
T.C. Memo 1967-63; 1967 Tax Ct. Memo LEXIS 195; 26 T.C.M. (CCH) 332; T.C.M. (RIA) 67063; April 4, 1967
Anthony Felise, pro se., Hudson, N. Y. Morley H. White, for the respondent. SCOTT *195 Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax and additions to tax for the years and in the amounts as follows: Additions to Tax Under
I.R.C. 1954
Year
Deficiency
Sec. 6653(a)
Sec. 6653(b)
1961
$ 351.94
$17.60
1962
3,343.40
$1,671.70
The issues for decision are (1) Whether petitioner is entitled to deductions for automobile expenses including gas, oil, depreciaion and repairs in the amount of $623.06, telephone expenses in the amount $72of, *196 clothing expenses in the amount of $200, entertainment expenses in the amount of $500, charitable contributions in the amount of $550.74, and medical expenses in the amount of $82.61, or any portion of such deductions, for the taxable year 1961. (2) Whether petitioner is liable for an addition to tax for the year 1961 for negligence or intentional disregard of rules and regulations. (3) Whether petitioner received during the year 1962 income which he failed to report, and if so, the amount of such income. (4) Whether all or any part of any deficiency due from petitioner for the taxable year 1962 is due to fraud with intent to evade tax. Findings of Fact Petitioner is an individual. He filed an individual Federal income tax return for the calendar year 1961 with the district director of internal revenue, Newark, New Jersey. From January 30, 1961 to July 6, 1962, petitioner was employed by Geo. J. Wolf Realty Company, Jersey City, New Jersey, as a licensed real estate salesman. His compensation was on a commission basis. For the taxable year 1962 he earned in his employment by Geo. J. Wolf Realty Company $2,451.04. No Federal income tax was withheld from this amount. As a *197 real estate salesman, petitioner incurred automobile, telephone, and some other expenses in dealing with prospective customers. In July 1962 petitioner's automobile had a value of around $1,500. Petitioner married Lena Sima Felise (hereinafter referred to as Lena) on May 25, 1961. Lena previously had been married to George F. Wendt. In July 1951, George F. Wendt and his wife, Lena, purchased a house in Jersey City, New Jersey, for $7,500 plus a $1,000 premium. In mid-1959 the Wendts separated. On October 14, 1959, George Wendt, for a consideration of $3,750 from Lena, signed his ownership, right, and interest in the house in Jersey City, New Jersey to Lena. On September 9, 1960, Lena sold the house in Jersey City, New Jersey for $17,750. On December 23, 1960, Lena divorced George Wendt and resumed using her maiden name of Lena Sima. On March 14, 1961, Lena purchased a small apartment building in Jersey City, New Jersey for $27,000. After his marriage to Lena in May 1961, petitioner took care of managing the rental of the apartment building in Jersey City, New Jersey, which Lena had purchased in March 1961 and collecting the rents from the tenants of the property. The apartment *198 building was Lena's separate property held in the name of Lena Sima. On January 17, 1962, Lena sold the apartment building in Jersey City, New Jersey for $31,000. From February 4, 1952, until January 31, 1961, Lena had a checking account in her own name at the Hudson City Savings Bank, Jersey City, New Jersey. All moneys maintained in this checking account were separate property of Lena. On January 31, 1961, Lena transferred the money then on deposit in this checking account to savings account No. X7992 at the Hudson City Savings Bank in Jersey City, New Jersey, maintained under her maiden name of Lena Sima. The money to make the down payment of $12,300 on the apartment building in Jersey City, New Jersey, which Lena purchased in March 1961 for $27,000, came from a withdrawal from account No. X7992 at the Hudson City Savings Bank in Jersey City, New Jersey. On January 17, 1962, when Lena sold the apartment building in Jersey City, New Jersey, she deposited to account No. X7992 at the Hudson City Savings Bank, Jersey City, New Jersey, $16,229.72 which was the total amount she received from the sale of the apartment building. All money maintained in account No. X7992 was Lena's separate *199 property, and all money used to purchase the apartment building in Jersey City, New Jersey was Lena's. On June 14, 1960, petitioner opened in his name only a checking account No. X4021 at the Hudson City Savings Bank, Jersey City, New Jersey, and thereafter he maintained this account at the Bayview Branch of the Hudson City Savings Bank in Jersey City, New Jersey. On July 9, 1962, petitioner received $10,500 from account No. X7992 maintained in Lena's name only at the Summit Avenue office of the Hudson City Savings Bank, Jersey City, New Jersey and deposited this $10,500, together with an additional sum of $35.50, in his account No. X4021 at the Hudson City Savings Bank, bringing the balance in this account to $10,537.25. On July 10, 1962, petitioner withdrew $250 from his account No. X4021 and on July 12, 1962, he withdrew $10,285 from this account leaving a balance of $2.25 in the account. On July 18, 1962, Lena filed under oath, a Complaint-Warrant with the Municipal Court of the City of Jersey City, New Jersey, regarding the withdrawal of the $10,500 from account No. X7992 maintained at the Summit Avenue office of the Hudson City Savings Bank, stating in part that petitioner *200 "feloniously and falsely did make, forge and counterfeit a withdrawal slip, bearing the signature of complaint [Lena] and did present said withdrawal slip to the Hudson City Savings Bank, at 567 Summit Avenue, Jersey City, and did unlawfully receive the sum of $10,500 from said bank, said sum being charged as a withdrawal from the account of said complainant." Petitioner was indicted in the Superior Court of New Jersey, Hudson County, Law Division, during the 1962 term on two counts of forgery, both alleging that the withdrawal slip presented with pass book No. 97992 for the withdrawal of $10,500 from that account was forged and counterfeited, the first count alleging that the forgery was within the intent to prejudice, injure, damage and defraud Lena, and the second count alleging that the forgery was with the intent to prejudice, injure, damage and defraud the Hudson City Savings Bank and Lena. This indictment was superseded by an indictment in the 1964 term of the Superior Court of New Jersey, Hudson County, Law Division, which was in practically the same language as the original indictment. Petitioner was arrested in California during the year 1965 and was extradited to *201 New Jersey to stand trial. The cost of the extradition from California to New Jersey was paid one-half by Lena and one-half by Fireman's Fund American Insurance Companies, the surety for Hudson City Savings Bank, Jersey City, New Jersey. The Hudson City Savings Bank, by the surety company, paid over to Lena $10,500, a claim in that amount from the bank having been made in Lena's name by her attorney in a letter dated July 13, 1962, to the bank, and a Summons and Complaint against the bank filed in January 1963. On July 13, 1962, Lena also signed a sworn statement in which she stated that she had examined the draft, dated July 9, 1962, on which payment of $10,500 from her account was made by the Hudson City Savings Bank and the signature on the withdrawal slip was not her signature and she did not make the signature. In this affidavit she further stated that on July 9, 1962, the Hudson City Savings Bank issued its Treasurer's check No. 148391 for the sum of $10,500, payable to Lena Sima, that this check was endorsed over to the order of petitioner, and then endorsed "Lena Sima," that she had examined the check and endorsement thereon and that the endorsement was not her signature *202 and she did not make the withdrawal nor cash the check representing the withdrawal, nor receive any of the moneys therefrom. Petitioner was tried in the Hudson County Court, Law Division - Criminal, on January 19 and 20, 1965, under the 1964 indictment. In that case Lena appeared as a witness for the State and testified that she did not make the withdrawal on July 9, 1962, from her bank account at Hudson City Savings Bank and that the signature on the withdrawal slip was not her signature and that she had not authorized anyone to sign her name to the withdrawal slip. She testified that she had become aware of the withdrawal on July 12, 1962. She testified that she had left home that morning while her husband was dressing, had gone to mass and then to see her father and had not returned home until 3:30 o'clock in the afternoon, that when she got home there were "clothes all over the bed." She testified that she looked in the closet and noticed his clothes were gone and that "[the] first thing I thought of was the bank book." She testified that she found the bank book, looked at it and discovered that there was a withdrawal of $10,500 which was taken out on July 9, and she immediately *203 called up the bank and told them the money had been taken out. She testified that the next day she went to see the men at the bank and had to go file a complaint against her husband for forgery. She testified that she kept the bank book in the bedroom drawer with her policy in a brown envelope. She testified that she had been to the Hudson City Savings Bank with her husband many times and that she had sent her husband to the bank to make deposits for her but that he had never made a withdrawal without her being there. She testified that she did not confront her husband with the withdrawal when she discovered it because he was not there and she didn't know where he was and that she had not seen him since the morning of July 12, 1962, until he appeared in Court on January 19, 1965. She testified that she filed the complaint on July 18, 1962, in the Jersey City Municipal Court charging her husband with forgery, Because I noticed he had taken $10,500 out of my bank account on July 12th and he left me five months pregnant. I had left my job. I had depended on him. Then when I needed him most, he desserted me and he took the money. I owned a house before I knew him. I bought a house and *204 sold it after I married him. I sold it. That's how come I had all this money. We were only married fourteen months. He desserted me with a child which is 27 months old now. I have to work to feed it. I want to know how you sleep nights. Petitioner left Lena on July 12, 1962, and shortly thereafter moved to California where he remained for the balance of the year 1962 and throughout the years 1963 and 1964. Petitioner testified at the trial on the forgery charges against him that on July 9, 1962, he and Lena had gone to the bank together, that he filled out the withdrawal slip and Lena signed it and sat down in a chair in the bank, that he took the withdrawal slip together with the pass book to the teller and received the check drawn to the order of Lena, that he took the check to her and she endorsed it, and that later he deposited the check in his checking account. He stated the reason for the withdrawal was that he and Lena were planning to separate and had decided to split their assets. He testified that at the time he was in the real estate business and that when he withdrew $10,285 from his personal savings account at the Hudson City Savings Bank on July 12, 1962, he intended *205 to start a business of bringing owners and buyers of property together. He testified that shortly after July 12, 1962, when he left Jersey City he went directly to the Los Angeles area where he did open such a business. He testified that prior to separating, he and Lena had discussed breaking up and making their separate ways because she wanted to stay in Hoboken near her family but they had not discussed what they were going to do after they separated. On January 21, 1965, the Court charged the jury in the trial of petitioner under the indictment for forgery and the jury on that date returned a verdict of "not guilty" on both counts of the indictment. Shortly after petitioner's acquittal on January 21, 1965, he and Lena resumed living together as husband and wife. Sometime in 1965 they began living together in California. After petitioner and Lena resumed living together as husband and wife, she withdrew money from a savings account in her individual name and deposited such money in a joint savings account with petitioner, and also withdrew money from her individual account for certain family expenditures and to make payments on property to which she and petitioner took title *206 as joint tenants. Petitioner received $144 in commissions from Arthur Murray Dance Studio. Lena filed separate individual income tax returns for the years 1961 and 1962. Respondent proposed certain deficiencies in Lena's income as reported for the year 1962 resulting from increases in interest income and a capital gain from the sale of the apartment building in Jersey City, New Jersey. Geo. J. Wolf Realty Company filed a U.S. Information Return for the Calendar Year 1962 showing payment of commissions not reported on form W-2 to petitioner of $2,451.04 during that year. Petitioner's address as shown on this form was 60 Wilkinson Avenue, Jersey City, New Jersey. Respondent caused a search to be made in the office of the district director of internal revenue at Los Angeles, California, and in the office of the district director of internal revenue for the district of New Jersey for an income tax return for the calendar year 1962 filed by petitioner. The result of the search disclosed no return for the calendar year 1962 filed in petitioner's name. For the calendar years 1959 and 1960 petitioner filed Federal income tax returns with the district director of internal revenue at *207 Newark, New Jersey, reporting gross income of $3,137.09 for 1959 received as an expeditor for Arthur Murray Studio and Henry Miller Industries and gross income of $2,853.31 for the calendar year 1960 received as an expeditor for Henry Miller Industries. Respondent in his notice of deficiency disallowed all deductions claimed by petitioner for the calendar year 1961 and informed petitioner that since his allowable itemized deductions were zero and his adjusted gross income under $5,000, his tax liability had been computed by use of the Supplemental Tax Table based on one allowable exemption. Respondent also determined that part of the deficiency in petitioner's income tax for the calendar year 1961 was due to negligence and therefore the addition to tax provided by section 6653(a), I.R.C. 1954[1] was applicable. Respondent in his notice of deficiency determined that petitioner had taxable income of $11,851.04 for the calendar year 1962 after reduction of his gross income by the standard deduction of $500 and a personal exemption of $600, stating that petitioner failed to report taxable commissions *208 income in the amount of $2,451.04 received from Geo. J. Wolf Realty Company and the amount of $10,500 "representing monies withdrawn by you from a savings account listed under your wife's maiden name, 'Lena Sima,' [which] has been determined to constitute taxable income and is includable on your income tax return as other income." Respondent also informed petitioner that it had been determined that all or a part of the deficiency for the taxable year ended December 31, 1962, was due to fraud with intent to evade tax and therefore the 50 percent penalty provided by section 6653(b) was applicable. Opinion The issues with respect to the year 1961 are purely factual. Petitioner claimed deductions totaling $2,028.41, all of which were disallowed by respondent, the respondent using the optional tax table for individuals with adjusted gross income of less than $5,000 provided for in section 3. The evidence, however, shows that from January 1961 throughout the balance of that year and for the first half of 1962 petitioner was employed as a real estate salesman doing the type of work which meets *209 the requirements of the definition of "outside salesmen" under section 62(2)(D). Petitioner is therefore entitled, under that section and respondent's regulations 1.62-1(h), to deduct from his gross income the expenses attributable to his trade or business of outside salesman to arrive at his adjusted gross income to be used in determining his income tax from the optional tax table. Under section 1.62-2 of respondent's regulations the operating expenses of an automobile used in a trade or business of outside salesman and selling expenses are ordinary and necessary business expenses which may be deducted from gross income in computing adjusted gross income. Petitioner's testimony as to the deductions he claimed which would fall into the category of ordinary and necessary expenses of carrying on his trade or business as an outside salesman was meager. However, he did specify that he used his automobile in showing property to prospective customers and incurred some telephone and other incidental selling expenses. At another point in his testimony he stated that his automobile in mid-1962 was worth approximately $1,500. The evidence also shows that in 1961 he received commissions as *210 a real estate salesman from Geo. J. Wolf Realty Company of $2,753.71. In the absence of any allowance by respondent for outside salesman expenses and with no other facts except those outlined above, it is difficult to make any informed estimate of the amount of petitioner's ordinary and necessary business expenses. However, since petitioner has shown that he did have some such expenses and respondent has allowed no amount of such expenses, we feel impelled to make some estimate, weighing heavily against petitioner for his total failure to present and, as far as the record shows, to keep any record of his expenses. In his testimony he did not present sufficient facts to permit of an informed estimate of such expenses. From a consideration of the total income earned and petitioner's estimate of the value of his automobile in mid-1962, the fair inference from the record being that this is the same car he had in 1961, and recognizing that in addition to automobile expenses there would be some other incidental business expenses in selling real estate, we conclude that petitioner is entitled to deduct from his gross income in 1961 to arrive at adjusted gross income the amount of $200 for *211 all ordinary and necessary business expenses of his trade or business as an outside salesman. Except to this extent, we sustain respondent with respect to the calendar year 1961 in disallowing the deductions claimed by petitioner. Petitioner has made no showing of why he had no supporting data for his claimed deductions in 1961 or that he kept records of any kind as to his expenses as an outside salesman and has therefore totally failed to show error on the part of respondent in determining that a part of the deficiency for the year 1961 was due to negligence or intentional disregard of rules and regulations. We therefore sustain respondent's determination of addition to tax under section 6653(a) for the year 1961. The only two issues presented by the pleadings with respect to the year 1962 are whether the $10,500 which respondent included in petitioner's income as representing money withdrawn by petitioner from a savings account maintained in his wife's maiden name was properly includable in petitioner's income and whether petitioner is liable for the addition to tax for fraud provided under section 6653(b). Petitioner claims that the $10,500 which he received from his wife's *212 separate account represented a gift from Lena to him. He attempted to substantiate this contention by showing that when he and Lena resumed living together as husband and wife in 1965, Lena had transferred funds from her individual account to the joint account maintained by them and had used funds withdrawn from her individual account for their family expenses and as payments on property acquired by them as joint tenants. After considering this evidence in conjunction with the other evidence of record, including the charges brought by Lena against petitioner in connection with the withdrawal of the $10,500, we conclude that petitioner has not shown that the $10,500 was a gift from Lena to him. In this connection it might be noted that when he was tried under the indictment for forgery, petitioner did not claim that the money was a gift but testified that it represented a property division between him and Lena. We are unwilling to conclude, as respondent argues we should, that petitioner obtained the money by forgery. He was acquitted of the forgery charge in the criminal trial. The evidence in the record in the instant case which we have of forgery is the testimony of Lena and other *213 witnesses in the trial of petitioner on the forgery charge, which testimony was stipulated into the record in this case with the statement that the testimony of the State's witnesses as reflected in Joint Exhibit 11-K is to be accepted as testimony under oath and for all purposes in this case and that neither party need call these witnesses. Lena, of course, was a State's witness in the forgery trial. The witnesses other than Lena merely testified as to the withdrawals and deposits of funds. Because of this stipulation we have recited in our findings some of the testimony given by Lena at this forgery trial. This testimony, even if accepted as true and complete, would not prove that petitioner forged either the withdrawal slip or the endorsement on the check which he deposited and all it would show is that the signatures were not written by Lena. It would require the conclusion from the circumstances surrounding the withdrawals that only petitioner had the opportunity to commit the forgery. However, the explanation by Lena of immediately, upon discovering that petitioner had left her, thinking of her bank book, as well as her explanation of the suddenness of her discovery of petitioner *214 having left, leads us to conclude that Lena was in fact aware, prior to July 12, 1962, that money had been withdrawn from her account and that she may have acquiesced in the withdrawal and deposit. Petitioner admittedly received the $10,500 in the year 1962 from funds belonging to Lena. Since we conclude that petitioner has failed to show that this amount was a gift and that the facts in this case do not show that petitioner obtained the money by forgery, we have a situation of petitioner's having received $10,500 from his wife's separate funds in 1962 under circumstances which are unexplained. The burden of proof with respect to respondent's determination of the deficiency is on petitioner and he has failed to show that the $10,500 he received in 1962 was not taxable income. If the money was in payment for some form of services he rendered in connection with Lena's property, it would be includable in petitioner's income even though received from his wife. Cf. Grace Johnson Munroe, 32 B.T.A. 995 (1935). If petitioner received the money either under some misrepresentation as *215 to the use to be made of the funds or received it for some specific purpose and subsequently converted the funds to his own use, then the amounts are includable in his income as amounts which he obtained and held during the taxable year under a claim of right even though he might be legally accountable in a proper-type proceeding to Lena for the funds or required to return the amount to her. Rutkin v. United States, 343 U.S. 130 (1952) and James v. United States, 366 U.S. 213 (1961). See also David L. Zips, 38 T.C. 620 (1962). If the circumstances of petitioner's receipt of the $10,500 were such that the amount was not income to him, he has failed to sustain the burden placed on him to show such circumstances. We therefore sustain respondent in his inclusion in petitioner's income for the year 1962 of the amount of $10,500. The final issue is whether or not any portion of the deficiency in petitioner's income tax for the year 1962 was due to fraud with intent to evade tax. On this issue the burden rests on respondent. Respondent argues that he has *216 sustained this burden. Respondent points to the failure of petitioner to file an income tax return for 1962 although he admitted that he received $2,451.04 of real estate commissions in that year and respondent says he received $144 in commissions from Arthur Murray Studio in that year although the record fails to show the year in which such commissions were received, to the fact that he had filed returns in prior years showing that he recognized his obligation to file a return, and to petitioner's overstating of his deductions on his 1961 return as proof of fraud. The record does not show that petitioner did overstate deductions in the year 1961 but merely shows a total failure of proof on the part of petitioner that respondent erred in disallowing the deductions claimed by him in that year except to the limited extent we have found he was entitled to a deduction for the year 1961. Respondent did show that a search was made of the records of the district director's office at Los Angeles and of the office of the district director of New Jersey for a return filed by petitioner, which disclosed that there was no record of a return having been filed by petitioner in either Los Angeles *217 or New Jersey. Petitioner testified that he did file a return for the year 1962 in Los Angeles. We conclude that respondent has shown by a preponderance of the evidence that no return was filed by petitioner for the year 1962. However, we recognize that if petitioner in fact did mail a return showing no tax due, he would not necessarily know whether the return was actually received by the district director. We do not consider the bare fact that respondent has shown by a preponderance of the evidence that petitioner failed to file a return for the year 1962 to be the clear and convincing evidence of fraud that respondent is required to show to sustain the addition to tax for fraud. Certainly, the failure of petitioner to include in income the $10,500 which he received in 1962 under the circumstances and conditions we have discussed is not clear and convincing evidence of fraud. Here, again, petitioner has merely failed to prove error in respondent's determination. Respondent has not proved that the $10,500 was in fact taxable income to petitioner. The amount might have had its origin in a loan or advance by Lena to petitioner although there is no evidence in the record from which we *218 can conclude that such is the fact. See Van Inwegen v. Van Inwegen, 4 N.J. 46, 71 A. 2d 340 (1950). We therefore find that respondent has failed to show that any part of the deficiency for the year 1962 was due to fraud with intent to evade tax. Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩