422 P.2d 67

**Carrie S. LOVELAND, Plaintiff-Appellant,**

v.

**Harold G. LOVELAND, Defendant-Respondent.**

**No. 9791.**

Supreme Court of Idaho.

Jan. 5, 1967.

Reginald R. Reeves, Idaho Falls, for appellant.

Sharp, Anderson & Bush, Idaho Falls, for respondent.

McQUADE, Justice.

Carrie S. Loveland, appellant, and Harold G. Loveland, respondent, intermarried at Preston, Idaho, December 16, 1942, and were divorced by decree of the district court on June 22, 1965.

Five children were born of the marriage and at the date of the decree, their ages were: Alan, 20 years, 9 months; Ronald, 19 years, 10 months; Stephen, 18; Debra, 11; and Robert, 3.

The district court found the community assets to be $137,600 and the debts to be $60,000, including $46,000 in mortgages.

On October 31, 1964, appellant commenced this action for divorce on grounds of extreme cruelty, I.C. § 32–603, alleging that respondent had been "stepping out with another woman." While respondent generally denied this, he chose not to attempt a rebuttal and the parties so stipulated.

The court accepted the parties' stipulation as to extreme cruelty. The parties also stipulated that the court could enter an order requiring respondent to pay a reasonable fee for appellant's attorney at the close of trial. There was brief testimony by both parties regarding the ages and needs of the children and the family's prior standard of living, but the only serious dispute concerned the value of community property and custody and support of the children over 18 years.

At the close of trial the district court granted appellant a divorce on grounds of extreme cruelty and took under advisement the questions of child custody, support, division of the community property and attorney's fee. Later, the court concluded the community assets approximately to be $137,-000 with liabilities of $60,000, for a net community value of $77,000. Of this net value, appellant was decreed slightly more than $53,000 and respondent, $24,000. Custody of the two younger children was awarded appellant and the court found that the three older boys had attained sufficient maturity to decide for themselves with which parent they would live. The court ordered respondent to support the second

and third children, Ronald and Stephen, until they attain 21 years of age and to pay appellant a total of $160 per month for the support of the two younger children. Respondent had previously set aside sufficient funds to support Alan, until after he had attained 21 years. The court ordered no alimony for appellant, finding that the community assets assigned her would provide personal support, and also that she was trained as a secretary and bookkeeper and capable of working to support herself. Finally, the court decided that appellant should pay her own attorney's fee.

Appellant assigns error to the district court's valuation and division of community property, its child custody and support awards, the denial of alimony to appellant from respondent's separate property, and the refusal to award a reasonable attorney's fee to appellant's lawyer.

The parties' major community assets were real estate, including the home residence, rental units and vacant lots, and the Loveland Construction Company. Regarding the real estate values, respondent introduced records showing cost and present book value and appraisals of each parcel's market value made shortly before trial by Charles K. Thompson, M.A.I., and a member of the Society of Residential Appraisers, whose qualifications were stipulated to by appellant's attorney. Respondent called as witnesses both Mr. Thompson and respondent's accountant, Rulon Williams, a Certified Public Accountant. Appellant ob-

jected to some of respondent's evidence but did not offer evidence in support of her objections nor did she attempt a rebuttal, although the trial judge, in overruling appellant's objections, continually reminded appellant's attorney that he would consider any rebuttal evidence.

The real property had a book value of $60,626.84 and was appraised at a market value of $81,150.00. The court found the property to be worth $81,000.00.

As evidence regarding the value of the construction company, respondent presented records of book value and recent inventory taken by him at market value of the company's equipment and material and introduced the income figures from federal tax returns for the prior five years.

The inventory valued equipment and materials at slightly less than $26,000 (less an $8,000 incumbrance), approximately the book value. Net income per annum for the preceding five years averaged slightly less than $12,000.[1] On cross-examination of respondent's two witnesses, attorney for appellant attempted to establish that in addition to its equipment and material, the construction company had a substantial intangible asset of goodwill. However, both the company's accountant and the attorney for its bondsman emphatically denied that any valuation for goodwill attached to this company. They testified that any goodwill would attach rather to the personal ability and credit standing of the company's manager than to the company as an entity.[2]

1. For 1960 the Loveland Construction Company's net income for federal income tax purposes was $6,571.28; for 1961, $3,074.41; 1962, $5,196.64; 1963, $31,693.43; and for 1964, $13,158.86. Both the company's accountant and an attorney for a construction project bonding company which had bonded the Loveland Company's recent projects, testified that a broad fluctuation of yearly net income, such as is shown in the above figures, is commonplace for small construction companies.

2. Rulon Williams, C.P.A., the Loveland Construction Company's accountant, in his testimony analyzed the question of goodwill for this particular company as

follows: " * * * take the net profit * * * deduct * * * a reasonable compensation for [owner-management] * * * and also reduce it further by interest on the value of the assets in the business * * * " and the excess is the Capitalization factor of goodwill. This witness then took the yearly average income of $11,939.00, reduced it by $12,000.00 "reasonable compensation" for the Loveland's operating the business ("probably a salary of 12,000 a year for operating the business would be lower than the average pay for an executive in this type of work," he testified) and showed "a deficit balance" so "of course, you could not include any goodwill."

Donald R. Purcell, attorney for the Loveland Construction Company's bondsman, testified that the construction company was in serious financial difficulty. He also testified that failure to pay its debts as they came due had jeopardized the bond. He testified that the company then had $33,000 in past due debts outstanding and though still solvent, it risked the imminent forfeiture of its bond. If the company forfeited the bond, Purcell testified, it would irrevocably lose its credit in the construction industry and would then be unable to procure new construction jobs.

The court found the construction company to have a net worth of $26,000.

The district court is vested with discretion to assign community property "in such proportions as the court * * * deems just." I.C. § 32-712(1) (Supp.1965). The exercise of its discretion is restricted only by the "facts of the case and the condition of the parties" and the division of community property is now, by 1965 amendment, equally discretionary "regardless of the ground or grounds on which the dissolution decree is rendered."

This court will not disturb a district court's discretionary division of community property except where such division caused a direct violation of statute or a serious inequity.

In the light of the record in this case, we approve the trial court's division of the community assets.

The trial court awarded custody of the two younger children to appellant and decreed that the three older children, all boys older than 18 years, should decide for themselves with which parent they wished to live.

Respondent was ordered to support all five children. For support of the two younger children, he was required to pay appellant $160 monthly.

Awards for child custody and support are both within the discretion of the trial court. I.C. § 32-705 (custody); I.C. § 32-706 (support where husband at

fault); I.C. § 32-710 (support); Angleton v. Angleton, 84 Idaho 184, 370 P.2d 788 (1962) (custody); and the trial court has continuing jurisdiction to modify the decrees of custody and support at any time as changed circumstances may require. I.C. §§ 32-705 and 32-706; Thurman v. Thurman, 73 Idaho 122, 245 P.2d 810, 32 A.L.R.2d 996 (1952) (custody); Andersen v. Andersen, 89 Idaho 551, 407 P.2d 304 (1965) (support). In evaluating the trial court's original custody and support decrees we must consider them in light of the continuing jurisdiction provision. McMurtrey v. McMurtrey, 84 Idaho 314, 372 P.2d 403 (1962).

We find no abuse of discretion here and approve the child custody and support decrees.

The district court did not award alimony to appellant, finding that a $10,500 community bank account assigned her would be sufficient to "start her on her own" and that the rental income from real estate awarded her plus her training and ability to work as a secretary and bookkeeper would be sufficient for her support. Respondent testified and appellant did not deny that she had been regularly working during the six months before trial. The home residence was also awarded to her.

It was within the discretion of the trial court to consider an award of alimony. Refusal to award appellant alimony in this case was not an abuse of discretion by the trial judge.

Appellant argues that the district court abused its discretion by not ordering respondent to pay appellant's attorney a reasonable fee. The court found that appellant's property award was sufficient to enable her to pay her attorney a reasonable sum for his services.

The trial lasted one day. Four procedural motions before trial consumed perhaps another day. The grounds for divorce were not contested and, on the disputed issues, appellant adduced no evidence besides her own testimony.

The district court did not err by refusing to order respondent to pay appellant's attorney fee.

The judgment is affirmed. No costs allowed.

McFADDEN, C. J., and TAYLOR, SMITH, and SPEAR, JJ., concur.