511 P.2d 800

Everett L. HOOKER, Plaintiff-Respondent,

v.

Louise F. HOOKER, Defendant-Appellant.

No. 10830.

Supreme Court of Idaho.

Sept. 25, 1972.

On Rehearing June 26, 1973.

---

12. *Supra,* note 6.

13. *See* C.S. Rhyne, Municipal Law, § 32–36, p. 926 (1957).

Stephen Bistline, Sandpoint, for defendant-appellant.

Thomas A. Mitchell, Coeur d'Alene, for plaintiff-respondent.

BAKES, Justice.

Everett Hooker (hereinafter referred to as respondent), after 16 years of marriage to Louise Hooker (hereinafter referred to as appellant), filed this action for divorce in the district court of the First Judicial District. They have one child, Brian, age 16, who by stipulation of the parties is to remain with respondent husband. The district court entered a decree of divorce in favor of both parties and divided the community property substantially equally. The primary issues during the trial, perpetuated in this appeal, involve the characterization and ultimate disposition of the parties' real and personal property. Principally at issue herein, and hence deserving of detailed comment, are two of appellant's four as-

signments of error: (1) that the district court erred in awarding 80 acres of community real property to respondent and in undervaluing the property for purposes of determining the amount of appellant's lien thereon; and (2), that the court erred in concluding that certain real property which consisted of both community and respondent's separate property had not been transmuted entirely to community property by the parties. The following map illustrates the parcels:

Township 52 North, Range 3 WBM

Appellant raises two additional allegations of error which can be summarily disposed of. First, appellant contends that the court erred in characterizing four tax refund checks as community property (which as community property were equally divided between the parties by the court). The substance of appellant's contention is that the checks represent a refund on withholdings from appellant's salary as a school teacher. Appellant contends that her taxable earnings which were the.

basis of the refunds were accumulated while she was living separate and apart from respondent and, therefore, should be characterized as appellant's separate property. I.C. § 32–909. For this reason appellant submits that the tax refunds, being but a return of earnings, should have been awarded entirely to appellant.

The parties separated in December, 1968. It is uncontroverted in appellant's testimony that the most recent of the refund checks was from her 1968 income, and that the check was made out to both respondent and appellant (E. L. and Louise Hooker), which indicates that the couple filed a joint return. These factors were sufficient to allow the trial court to properly conclude that the checks were indeed community property since earnings of a married woman, while living with her husband, are community property. Since respondent and appellant cohabited until December, 1968, all of appellant's prior earnings must have been community property, and the return of such earnings in the form of tax refunds takes on the same character.

Secondly, appellant contends that the community should have been reimbursed for some $8,000 which respondent admitted expending for bulldozing certain roads on both his separate and the community property. From this admission by respondent, appellant asserts that respondent must reimburse the community for the community funds spent for the improvement of respondent's separate property. *E. g.,* Hiatt v. Hiatt, 94 Idaho 367, 487 P.2d 1121 (1971). Notwithstanding the fact

that respondent husband is the manager of the community assets and accountable for misuse of community funds, the burden of showing the right to reimbursement of the community rests with the party trying to establish or benefit by such reimbursement, in this case appellant. W. Brockelbank, The Community Property Law of Idaho, 229 (1962). In Idaho the amount of reimbursement is measured by the enhancement in value of the separate property occasioned by the expenditure of community funds thereon. Tilton v. Tilton, 85 Idaho 245, 378 P.2d 191 (1963). Although appellant may have shown that respondent made expenditures of community property funds on his separate property, appellant has not shown with any specificity what amount of the sum of $8,000 was expended on separate as opposed to the community property, and, even more critically, appellant has not attempted to show by what amount the amount expended enhanced the value of respondent's separate property. For these reasons, appellant cannot successfully attack the district court's failure to order the reimbursement of the community.

Appellant next challenges the impropriety of the district court awarding Parcel # 1, the community real property, to respondent subject to a lien in favor of appellant in an amount equal to one half the assigned value of the property. Parcel # 1 is an 80 acre tract, the East ½ of the SE ¼ of Section 20, Township 52, Range 3 WBM.[1] The district court heard testimony of two purportedly disinterested appraisal witnesses as to the value of the 80 acre tract. One witness, Mr. Gridley, ascribed a value of $100 per acre to the prop-

---

1. The record discloses some confusion concerning the description and disposition of the real property. In its memorandum decision the trial court concluded that the E ½ of the SE ¼ of Section 20 had been sold to three individual purchasers and that the proceeds due from such sale were community property. The actual sale parcels were located in the W ½ of the SE ¼ of Section 20 [Parcel 5], adjacent to the tract here at issue. The court's memorandum decision made no reference to the property located in the West ½ of the SE ¼. This confusion of the two

tracts was seemingly corrected in the Findings of Fact and Conclusions of Law drafted from the court's memorandum decision. However, the decree, as reflected in the transcript on appeal, appears to make an erroneous reference to the defendant in paragraphs IX and X. The trial court should examine the original decree to ascertain whether or not the property awarded in those two paragraphs was in fact awarded to plaintiff rather than to the defendant as erroneously appears in the transcript on appeal.

erty, while the other, Mr. Lee, estimated the value to be $200 per acre, a price at which Mr. Lee said he would purchase the property. In addition, both parties estimated the value of the property. Respondent, after initially claiming the property was worth $200 per acre, retracted his initial estimate and attached a value of $100 per acre to the property. Appellant testified that she would purchase the property at $175 per acre. The trial court in its disposition of the property awarded the entire tract to respondent, valued the property at $150 per acre, and gave appellant a lien on the property for $6,000, one half the value of the property.[2]

Appellant presents a twofold challenge of the district court's disposition. Appellant contends that the court erred not only in awarding the entire 80 acres to respondent, but also in undervaluing the property at $150 per acre.

■ In dividing the community property pursuant to a dissolution of the community, the district court is guided by the provisions of I.C. § 32–712 (as amended in 1965):

"The community property must be assigned to the respective parties in such proportions as the court, from all the facts of the case and the conditions of the parties, deems just, regardless of the ground or grounds on which the dissolution decree is rendered."

This statute has been construed to vest the trial court with a wide degree of discretion in making its division. Hammond v. Hammond, 92 Idaho 623, 448 P.2d 237 (1968); Loveland v. Loveland, 91 Idaho 400, 422 P.2d 67 (1967). Thus, consistent with our review of other awards or findings in divorce cases, the division or assignment of the community property will not be disturbed on appeal in the absence of a mani-

fest abuse of discretion. *E. g.* Davis v. Davis, 82 Idaho 351, 353 P.2d 1079 (1960).

■ On first blush it would appear that partitioning the 80 acres, giving 40 acres to each of the parties, would have been a more accurate way of dividing that community property. However, there is nothing in the record to indicate that each of the acres is of equal value, and it is likely that the same criticism of inequality could be made upon a division of the 80 acres between the parties. It is entirely possible that due to road frontages and other development factors that some portions of the 80 acre tract are of much greater value than others. Thus, in order to divide the property equally, the trial court may have been required to award more acres to one party than to another. The method employed by the trial court in determining the total value of the tract and dividing that amount equally between the parties was within the discretion vested in him by Section 32–712 and was not error. Winn v. Winn, 86 Nev. 18, 467 P.2d 601 (1970).

*Application of the Transmutation Doctrine*

■ The district court characterized certain other properties known as the "ranch property" [Parcels 3(a) and 3(b)] which were subject to a land sales contract between the parties and the Cadwalladers (the purchasers), as consisting of 160 acres of community property and some 78 acres of respondent's separate property. Respondent, with appellant's consent and acknowledgment, contracted with the Cadwalladers for the sale of the 238 acres at a total sales price of $65,000. The Cadwalladers had made, at the time of the litigation in the trial court, two payments which were equally divided by appellant and respondent. The remaining balance due at that time was $52,200. The trial court, after making the aforementioned characteriza-

---

2. The trial court awarded a community property truck and trailer to respondent and community property furnishings to appellant. The rest of the community property, which consisted of rights under contracts of sale of community realty and the 80 acre tract here at issue was awarded to respondent, subject to a lien for one half the value of the proceeds due under the contracts and one half the value ascribed to the 80 acre tract in favor of respondent. In consideration of the issue raised on appeal, we are immediately concerned only with that portion of the lien attributable to the 80 acre tract, namely $6,000.

tion, developed a valuation formula for purposes of determining the respective separate and community property interests in the proceeds to be paid on the contract. Neither party challenges the valuation method employed by the trial court, so it will not be questioned on appeal. Supreme Court Rules, Rule 41; *See* Hammond v. Hammond, 92 Idaho 623, 448 P.2d 237 (1968).

In accordance with its valuations, the district court in essence awarded one half of the proceeds attributable to community property and that portion of the proceeds attributable to the separate property to respondent, and awarded the balance to appellant.[3] It is this assessment and disposition of the proceeds that appellant challenges in this appeal.

Appellant contends that the parties agreed, at least implicitly, that all the property sold to the Cadwalladers was community property. In other words, appellant asks us to apply the doctrine of transmutation and find that respondent and appellant agreed to convert, or "transmute," respondent's separate property portion of the ranch property to community property.

[redacted] The general propriety of the doctrine of informal or oral transmutation and the scope of its applicability present issues of first impression in this jurisdiction. Although the doctrine is recognized to varying degrees in several other community property jurisdictions,[4] nowhere is the concept of oral or informal transmutation more well established or more commonly applied than in California where the agreement need not be formal and property may be transmuted by a mere executed oral agreement.[5] Woods v. Security First Natl. Bank, 46 Cal.2d 697, 299 P.2d 657 (1956). Simply stated, the principle of transmutation in California allows spouses pursuant to agreement *inter se* to convert or transmute the character of the separate property of one spouse to community property or the community property to the separate property of either spouse. H. Verrall & A. Sammis, California Community Property, 57–59 (1966); *See, e. g.,* Woods v. Security First Natl. Bank, *supra.*

[redacted] Regardless of whether or not the doctrine of transmutation is applicable in Idaho, the trial court concluded upon the evidence that no transmutation occurred. Appellant puts great weight on the fact that respondent had appellant sign and acknowledge the deed of sale of the property and equally divided with appellant the initial payments from the Cadwalladers. Respondent relied on isolated testimony of both appellant and himself which allegedly established that both spouses were at all times aware of respondent's existing separate property interest in the sale property. From our perusal of the record, it is evident that a substantial conflict in the testimony existed and the trial court ruled that appellant had not met her burden of proof. There was adequate and competent evidence to support that conclusion and it will

3. The district court actually awarded all the proceeds from the sales contract to respondent, subject, however, to a lien in favor of appellant. The portion of appellant's lien in regard to her share of the proceeds from the sale to the Cadwalladers amounts to one half the value attributed to the community property sold.

4. The doctrine is recognized in at least three western community property states besides California. These states are New Mexico, Nevada and Arizona. See, respectively, Chavez v. Chavez, 56 N.M. 393, 244 P.2d 781 (1952); Williams v. Williams, 86 Nev. 47, 464 P.2d 466 (1970); Estate of Sims, 13 Ariz.App. 215, 475 P.2d 505 (1970). Washington apparently does not allow real property to be transmuted merely by informal agreement between the spouses. *See* Neeley v. Lockton, 63 Wash.2d 929, 389 P.2d 909 (1964).

5. "All that is required to show an executed oral agreement of transmutation is proof of the parties' acts and conduct in dealing with their property. (Citation omitted). In an executory contract some act remains to be done, while in an executed contract everything is completed at the time of the agreement without any outstanding promise calling for fulfillment by the further act of either party." In re Raphael's Estate, 91 Cal.App.2d 931, 206 P.2d 391 (1949).

**524**

not be disturbed on appeal. Brammer v. Brammer, 93 Idaho 671, 471 P.2d 58 (1970).

Judgment affirmed, but the cause is remanded with directions to the trial court to correct the apparent misreference to defendant instead of plaintiff in paragraphs IX and X of the decree.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.

ON PETITION FOR REHEARING

BAKES, Justice.

Defendant-appellant Louise F. Hooker on rehearing asserts that this Court should exercise the paramount power vested in it by I.C. § 32–714 and order the 80 acre tract of land to be divided, or sold and the proceeds divided. We have reviewed the matter at length, and after considering the evidence and the disposition of the property made by the trial court, we are of the opinion that the trial court's distribution, taken as a whole, is equitable. Therefore, we adhere to the result arrived at in our original opinion.

DONALDSON, C. J., and SHEPARD, McQUADE and McFADDEN, JJ., concur.