643 P.2d 82

**Steven L. STOCKDALE,
Plaintiff-Appellant,**

v.

**Dianne Helen STOCKDALE,
Defendant-Respondent.**

No. 13980.

Court of Appeals of Idaho.

March 9, 1982.

Rehearing Denied April 16, 1982.

---

Dennis J. Sallaz of Sallez & Scanlan, Boise, for plaintiff-appellant.

Stanley W. Welsh of Clemons, Cosho & Humphrey, Boise, for defendant-respondent.

BURNETT, Judge.

This is an appeal from a judgment dividing property in a divorce proceeding. We are asked to decide two issues. First, did the magistrate err in refusing to recognize an oral or informal change ("transmutation") of the wife's separate real property into community property during the marriage? Second, did the magistrate abuse her discretion by making an unequal division of community property favoring the wife? On appeal to the district court, the judgment was affirmed. In this appeal, we affirm in part, but vacate a portion of the judgment and remand for reconsideration of the value placed on one of the community assets.

I

The transmutation issue focuses upon residential real property. When the parties were married in 1975, the wife owned a house acquired in a prior marriage. The parties made payments from community property on a mortgage loan against the residence. The husband testified at trial that in 1977 they orally agreed to treat the property as "our house." The wife denied it. However, she conceded that she had

written a letter to the mortgagee stating, "I would now like my mortgage loan and new coupon book to read Steven L. and Dianne H. Stockdale." She testified that she did so because her husband refused "to make payments or be any part of something that had somebody else's name on it." She did not execute an instrument of conveyance transferring any of her separate interest to the husband.

In 1978 the house was sold. Both parties signed the contract for sale and the closing statement. Proceeds from the sale were used to buy a second house. Both parties signed the purchase contract and closing statement on the second house. Later, in the divorce proceedings, the husband claimed that the second house was entirely a community asset because the wife's separate interest in the first house had been transmuted, by oral agreement and conduct of the parties, into community property. He argued that Idaho should adopt a doctrine of oral or informal transmutation of the rights of husband and wife to real property.

The magistrate found that, even if such a doctrine existed in Idaho, the husband had failed to sustain the burden of proving that a transmutation actually occurred. The district court entered a similar finding. Such findings will not be disturbed unless clearly erroneous. I.R.C.P. 52(a). However, where the doctrine of oral or informal transmutation is recognized, "[a]ll that is required to show an executed oral agreement of transmutation is proof of the parties' acts and conduct in dealing with their property . . . . [T]he agreement of transmutation may be of the most informal character." *Raphael v. Raphael*, 91 Cal.App.2d 931, 206 P.2d 391, 395–396 (1949). If such a test were applied to the instant case, we could not readily uphold the lower courts' findings. Consequently, we feel compelled to address the transmutation issue directly.

"Transmutation is a broad term used to describe arrangements between spouses which change the character of property from separate to community and vice versa." W. Reppy & W. DeFuniak, Communi-

ty Property in the United States 421 (1975). California has been a leader in recognizing transmutation by oral agreement or informal conduct of the parties. In *Wren v. Wren*, 100 Cal. 276, 34 P. 775 (1893), the California Supreme Court upheld an oral transmutation of earnings from community property to separate property. The court anchored its opinion in former sections 158 and 159 of the California Civil Code, (reen. §§ 4802, 5103), authorizing spouses to contract with each other as though unmarried and allowing them to alter their respective property rights by mutual consent. 34 P. at 776. In *Yoakam v. Kingery*, 126 Cal. 30, 58 P. 324 (1899), these statutes were employed to uphold a transmutation of land from separate property to community property, under a written interspousal contract that otherwise would have been of doubtful validity due to defects in the document. The increasingly broad import of the statutes was emphasized in *Perkins v. Sunset Tel. & Tel. Co.*, 155 Cal. 712, 103 P. 190 (1909), where the court said that ". . . the utmost freedom of contract exists in California between husband and wife . . . ." 103 P. at 194. Ultimately, the doctrine of oral or informal transmutation became so familiar in California that it was applied without specific reference to its statutory origins. *E.g., Pruyn v. Waterman*, 172 Cal.App.2d 133, 342 P.2d 87 (1959).

Several other community property states, with statutes deemed comparable to or compatible with California law, have adopted this doctrine. *E.g., Jones v. Rigdon*, 32 Ariz. 286, 257 P. 639 (1927); *Mullikin v. Jones*, 71 Nev. 14, 278 P.2d 876 (1955); *Chavez v. Chavez*, 56 N.M. 393, 244 P.2d 781 (1952). It does not necessarily follow that we should do so in Idaho. We do not have the broad statutes found in California.

Our community property system is set forth in Title 32, Chapter 9, Idaho Code. Section 32–916 presently provides that "[t]he property rights of husband and wife are governed by this chapter, unless there is a marriage settlement agreement entered into prior to or during marriage containing stipulations contrary thereto." *See also* I.C.

§ 32–905. Section 32–917 requires that "marriage settlements" be in writing, executed and acknowledged in the same manner as conveyances of land. Section 32–918 further requires that such agreements be recorded; but section 32–919 provides that if no recording occurs, the effect is the same as that of nonrecording upon a conveyance of real property. The agreement is still binding between the parties, absent intervening rights. *See Hartley v. Stibor*, 96 Idaho 157, 525 P.2d 352 (1974).

In 1980, the Legislature amended I.C. § 32–916, by adding the language, "agreement entered into prior to or during marriage," quoted above. This amendment made it clear that agreements changing the property rights of husband and wife could be executed either before or during marriage. However, the Legislature saw fit to leave intact the formal execution requirements of I.C. §§ 32–917 through 32–919. In a companion bill, the Legislature also amended I.C. § 32–906, dealing with rents and profits of separate property. This statute formerly had permitted rents and profits to be treated as separate property, rather than as community property, if so provided in the instrument by which the property was acquired. The amendment expanded the statute to allow spouses to make such an agreement between themselves, but it required the agreement to be in writing. We interpret the Legislature's actions to mean that, although husband and wife may elect at any time to change their property rights, they must engage in certain formalities.

This statutory framework sets our state apart from the other jurisdictions where the courts have embraced oral or informal transmutation. Idaho Code § 32–916, before amendment, and sections 32–917 through 32–919, have California counterparts in former California Civil Code §§ 178–181 (reen. §§ 5133–36). However, these California statutes have been tempered by former sections 158 and 159, discussed above, from which the doctrine of oral or informal transmutation was derived. In Idaho, our restrictive statutes have not been tempered by other provisions. They stand alone, and the policy they embody has been reaffirmed by the 1980 amendments to I.C. §§ 32–906 and 32–916. We defer to this recent reaffirmation of Idaho legislative policy. We hold that the separate or community character of real property may be altered only in the manner provided or permitted by statute.

Our holding does not displace existing rules permitting the character of personal property to change without written agreement. For example, our decision does not alter the general presumption in favor of community property, under which separate personal property may lose its character through commingling with community property. *E.g., Lepel v. Lepel*, 93 Idaho 82, 456 P.2d 249 (1969). Nor does it disturb the recognition of inter-spousal gifts of personal property, where proven by clear and convincing evidence. *E.g., Freeburn v. Freeburn*, 97 Idaho 845, 555 P.2d 385 (1976). We simply decline to establish in Idaho a doctrine of oral or informal transmutation of real property, by judicial fiat.

The issue in the present case is limited to real property. The marriage extended from 1975 to 1979. The transmutation is alleged to have occurred before the 1980 amendments to I.C. §§ 32–906 and 32–916. However, these amendments clarified and expanded the scope of permissible agreements between spouses concerning their property. They did not infringe upon any pre-existing statutory right to transmute property by oral agreement or informal conduct. Idaho Code §§ 32–917 through 32–919, prescribing the formalities, have been in effect since 1867. Moreover, in *Hooker v. Hooker*, 95 Idaho 518, 511 P.2d 800 (1972), our Supreme Court described the issue of oral or informal transmutation as one "of first impression in this jurisdiction." 95 Idaho at 523, 511 P.2d at 805. The court disposed of *Hooker* on factual grounds, and declined to rule on the transmutation concept. Consequently, during the marriage in the instant case, there was no provision for oral or informal transmutation in Idaho statutory or case law. We conclude that no

such transmutation occurred, as a matter of law.

## II

The husband contends that, even if there were no transmutation, the magistrate erred in making an unequal division of community property. The husband focuses initially upon a sailboat, which the magistrate awarded to him, charging its full market value against him in the division of property. The boat was repossessed by a bank during the trial for default on a loan. The husband argues that repossessed property could not represent a community asset, and that nothing should have been charged against him.

We do not entirely agree. The bank, as a secured creditor, apparently exercised its rights under Article 9 of the Idaho Uniform Commercial Code. See I.C. §§ 28–9–501, 503–505. Article 9 provides certain safeguards in the sale of personal property pledged to secure a loan. The debtor is entitled to any sale proceeds remaining after payment of the debt and the cost of preparing for a commercially reasonable sale. I.C. § 28–9–504. Redemption is also available under certain circumstances. I.C. § 28–9–506.

However, we cannot discern from the present record what ultimately happened to the boat. A trial court must base its findings upon substantial and competent evidence. E.g., Wood v. Sadler, 93 Idaho 552, 468 P.2d 42 (1970). The value of the boat at the time of trial was speculative. Its actual value to the community could not be ascertained until sale or other disposition in proceedings commenced by the bank. Therefore, we hold that the magistrate's finding of full market value was not supported by substantial and competent evidence. It was clearly erroneous and we set it aside. I.R.C.P. 52(a). Upon remand the district court—or, if further remanded, the magistrate—should take additional evidence, determine the actual value of the boat to the community, and make such adjustment, if any, in the division of property as may be just.

The husband also argues, generally, that the community property should have been divided as equally as practicable. When this divorce action was commenced in 1979, I.C. § 32–712 provided that community property must be divided "in such proportions as the court, from all the facts of the case and the condition of the parties, deems just." The magistrate found that the husband entered the marriage with only a few articles of personal property, and that the husband was unemployed for some months during the marriage. The wife testified that the husband had a drinking problem, battered her, and damaged community property. The magistrate further found that certain medical bills incurred by the wife resulted from abuse by the husband. The court concluded that an "equitable" division of the community property would favor the wife, and that the husband should bear full responsibility for the medical bills.

Our Supreme Court has held that the provisions of I.C. § 32–712, as then in effect, reposed in the trial court broad discretion to divide property and debts. Hammond v. Hammond, 92 Idaho 623, 448 P.2d 237 (1968). On appeal, under that statute, we will not "disturb a ... discretionary division of community property except where such division caused a ... serious inequity." Loveland v. Loveland, 91 Idaho 400, 403, 422 P.2d 67, 70 (1967). After reviewing the record in this case, we do not find a serious inequity arising from division of property and debts, aside from uncertainty about the boat. Therefore, we affirm the court's judgment, except the provisions concerning the boat. The cause is remanded for reconsideration of the value of the boat and for such modification of the judgment, if any, as may be just. No costs or attorney fees on appeal.

WALTERS, C. J., and SWANSTROM, J., concur.