657 P.2d 1083

**Richard Leon USTICK, Plaintiff-Appellant, and Cross-Respondent,**

v.

**Anne Stephanie USTICK, Defendant-Respondent, and Cross-Appellant.**

No. 13890.

Court of Appeals of Idaho.

Jan. 19, 1983.

James C. Meservy and James T. Jones, of Seeley, Jones & Fuller, Jerome, for appellant.

Jeffrey E. Rolig, of Hepworth, Nungester & Felton, Twin Falls, for respondent.

WALTERS, Chief Judge.

Richard Ustick and Stephanie Harding met in August, 1978, and, after three months of courtship, were married in November. The following March, each filed for divorce against the other. Based on grounds of irreconcilable differences, the presiding magistrate entered a decree of

divorce in favor of both parties on July 20, 1979, and decreed distribution of their community and separate property between them.

Central to this appeal, the magistrate determined that the sum of $53,088.89, which had been applied to the payment of the husband's delinquent Farmer's Home Administration (FmHA) debts in December, 1978, was a loan to the husband from the wife's separate property. The magistrate awarded judgment to the wife and against the husband in this amount plus interest at eight percent per annum. The judgment was appealed by the husband to the district court. The district court affirmed the judgment of the magistrate, approved a claim of homestead by the husband, and approved the satisfaction of an attorney fees lien against the husband's property. Both parties now appeal from the district court's determinations. We affirm the judgment of the magistrate but reverse the district court's determinations on the homestead and attorney's lien claims, for procedural reasons.

On this appeal, the husband contends the magistrate erred by entering the monetary judgment against him, and that the district court erred by not allowing a trial de novo in the proceeding upon appeal from the magistrate division. The wife cross-appeals, contending the district court erred by allowing the homestead claim of the husband and by allowing the husband's attorney to satisfy his lien for attorney fees from the proceeds of an execution sale of the husband's property. The sale was conducted under a writ of execution issued upon the judgment entered for the wife.

## I. APPEALABLE ISSUES AND SCOPE OF REVIEW

Preliminary to discussing the merits of the issues raised by the parties on this ap-

peal, we will address two procedural inquiries posed by the wife affecting the appealability and scope of review of the issues asserted by the husband. The wife suggests that the judgment of the magistrate cannot be reviewed on this appeal for the following reasons.

First, she points out that in his notice of appeal the husband seeks review of a denial by the district court of a motion to reconsider its affirmance of the magistrate's judgment. She contends that denial of a "motion to reconsider" is not appealable, because the rules of civil procedure do not provide for "motions to reconsider." Her argument implies that if the denial of the motion to reconsider was not appealable, then the appeal from the affirmance of the judgment in this case was not timely.[1]

Second, assuming the notice of appeal was timely in respect to the decision affirming the magistrate's judgment, the wife contends that our scope of review is limited to the decision of affirmance, and that the magistrate's judgment, *per se,* is not subject to review on appeal by this Court.

■ In support of her first procedural question, the wife cites *Obray v. Mitchell,* 98 Idaho 533, 567 P.2d 1284 (1977), as authority for the proposition that the Idaho Rules of Civil Procedure do not provide for motions to reconsider. In *Obray* a petition to reconsider a memorandum decision was presented to the trial court before that court had entered its findings of fact, conclusions of law and judgment. The trial court treated the petition as a Rule 59(e) motion to alter or to amend the judgment. On appeal, the Supreme Court of Idaho upheld the trial court's treatment of the petition. Thus, while it was stated in *Obray* that the rules do not provide for a petition to reconsider a memorandum decision,[2] the result obtained in *Obray* indicates

---

1. The decision of the district court affirming the magistrate's judgment was filed on June 26, 1980. On July 7, 1980, the husband filed for reconsideration of the affirmance. On August 18, 1980, the district court filed a memorandum opinion and order denying the request for reconsideration. The notice of appeal from the

district court proceeding was filed on September 5, 1980, within forty-two days (the time allowed for filing a notice of appeal, I.A.R. 14) from the August 18 decision, but more than forty-two days from the June 26 decision.

2. 98 Idaho at 538, 567 P.2d at 1289.

that if a petition is functionally the same as another motion which is recognized by the rules, it will be treated as though it had been properly labelled.

The posture of the present case, while it was before the district court, differed considerably from *Obray*. Here the request to reconsider was presented to the district court sitting as an appellate court, after that court had entered a decision affirming the magistrate's judgment. The request could not be treated as a rule 59(e) motion, because no judgment had been, or would be, entered by the district court. (n. 5, *infra*.) The request simply invited the district court to reconsider its decision affirming the trial court.

The husband's request to reconsider was, in essence, treated by the district court as a petition for rehearing, which is an application recognized and provided for by the rules of appellate procedure.[3] We note that the rules of procedure governing appeals from the magistrate division to the district court[4] do not explicitly provide for either motions to reconsider or petitions for rehearing. However, rule 83(b), I.R.C.P., specifically provides that, unless the district court orders a trial de novo, "[a]ll appeals from the magistrate's division shall be heard by the district court as an appellate proceeding." *See also* I.R.C.P. 83(u). Further, Rule 83(x) provides that "[a]ny appellate procedure not specified or covered by these rules shall be in accordance with the appropriate rule of the . . . [Idaho Appellate Rules] to the extent the same is not contrary to this Rule 83."

Rule 42, I.A.R., allows for the filing of a petition for rehearing within twenty-one days after the filing date of the court's opinion on the appeal. Here the husband applied for reconsideration (although his application more properly should have been designated as a petition for rehearing) within twenty-one days of the district court's decision on the appeal. It was therefore timely filed and was an appropriate method for asking the district court to "reconsider" its appellate opinion.

We note also that although petitions for rehearing are not required under the present rules before seeking further appellate review by a higher court, neither is the higher review limited, under the rules, solely to the question of whether the application for rehearing should or should not have been granted. Commonly, the denial of a petition for rehearing preserves for review, by the higher appellate court, the merits of the decision entered by the lower court on appeal. *See* Idaho Appellate Rules 48, 116, 118, 122.

■ We hold that the request of the husband for reconsideration was timely filed, was properly treated by the district court as a petition for rehearing, and preserved the merits of the decision of the district court affirming the magistrate's judgment, for further appellate review.

Next, the wife contends that further review of the final judgment of the magistrate is not allowed, under the Idaho Appellate Rules, on appeal from the district court. She appears to argue that because the husband can only appeal from the "decision" of the district court, we cannot include the magistrate's judgment in our review. We do not agree with this contention.

■ Decisions by the district court dismissing, affirming, reversing or remanding an appeal from the magistrate division are appealable. I.A.R. 11(a)(1). *Winn v. Winn*, 101 Idaho 270, 611 P.2d 1055 (1980). In *Nicholls v. Blaser*, 102 Idaho 559, 633 P.2d

---

**3.** We note that the husband did not file an instrument entitled "Motion to Reconsider" as such. Rather, he filed a "Notice of Motion for Reconsideration," indicating that at a time certain on the court's motion calendar he would present oral argument for reconsideration of the decision of affirmance. Concurrent with this notice, he filed with the court and served on opposing counsel a written memorandum setting forth the basis for his request for reconsideration. Although this procedure was highly unusual, the substance of the instruments he filed does not materially differ from that ordinarily included in petitions for rehearing.

**4.** I.R.C.P. 83(a) through 83(y).

1137 (1981), the Idaho Supreme Court established a standard for further appellate review of a decision entered by a district court after it has sat as an appellate court, reviewing on the record a judgment entered following trial at the magistrate level.[5] This standard requires that the appeals court review the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* at 561, 633 P.2d at 1139. *See also Griffin v. Griffin,* 102 Idaho 858, 860, 642 P.2d 949, 951 (Ct. App.1982). If those findings are so supported and the conclusions follow therefrom, and if correct legal principles have been applied, then the district court's decision affirming a magistrate's judgment will be upheld on further appeal.

We conclude here that the judgment of the magistrate, as well as the decision of the district court affirming that judgment, are reviewable under the *Nicholls* standard. We turn next to discussion of the merits of the issues on this appeal.

## II.  FACTUAL BACKGROUND

The trial record discloses the following undisputed facts. The husband owned and operated an eighty-acre farm near Jerome, Idaho. His interest in the farm was subject to an outstanding purchase money loan from FmHA. The husband also had three other outstanding loans from FmHA for the operating expenses of the farm. In the fall of 1978, after the couple had met and had decided to marry, these debts were viewed as an impediment to the success of their relationship. The parties decided to postpone the marriage for one year so the husband could settle these debts.

However, in October, 1978, the wife underwent exploratory surgery. A malignant tumor was discovered and removed. The wife had custody of two dependent daughters by a prior marriage. She became very concerned about the future needs of her daughters—for a home and guardian— should her health problems worsen. These circumstances seem to have overridden the decision to postpone the marriage until after the husband's debts were settled, for in November the couple were wed.

Prior to meeting the husband, the wife had been a businesswoman with a home in Billings, Montana. She was employed and traveled extensively throughout the West. She had decided to sell her house and invest the equity in California property, which would be a more convenient base for her travels. After the parties became romantically involved, they discussed the idea of "investing" the proceeds from the sale of the home in Montana either into the husband's farm, or into some other property or business.

Following the wedding in November, the husband received notice that his farm mortgage would be foreclosed if he did not pay approximately $48,800 by January 1 to settle his delinquent FmHA loan debts. The husband felt the amount due was closer to $30,000 and assured the wife that some mistake must have been made in the FmHA computations. In order to pay the FmHA debts, the wife sold her house in Billings at a price considerably below the appraised value. She received approximately $60,000 cash for her equity, and she deposited this sum in a joint checking account that the couple had opened.

On the same day the deposit was made, the couple paid the delinquent FmHA loan debts. The amount owed was paid by a

---

**5.** In *Nicholls,* the court characterized the issue on appeal, and addressed the standard of review, as one concerning an appeal from the "judgment" of the district court affirming a judgment entered in the magistrate division. We believe this characterization was an inadvertent misnomer. *Nicholls* did not involve the entry of a judgment by the district court after a trial de novo on appeal from the magistrate division. Rather, *Nicholls* involved a "decision" of the district court affirming the magistrate's judgment—the only "judgment" entered in that case. Under the procedure in *Nicholls* —as in this case—a district court does not enter a judgment, but instead enters an appellate decision. *See* I.R.C.P. 83(u); I.A.R. 11(a)(1); *Winn v. Winn, supra.*

check written in the sum of $53,089.88 on the joint checking account. After the FmHA delinquency had been paid, the couple discussed placing the wife's name on the deed to the farm.[6] This topic was discussed several times prior to the divorce. Each time, the husband assured her they would meet with his attorney and take care of the matter. For some reason, no meeting with the husband's attorney took place, and the wife's name was never placed on the deed to the farm. The wife testified that she never mentioned the word "loan" to the husband because she felt he would be insulted. She also denied that she ever intended to make a gift of the money to her husband. The record does not indicate the couple ever arrived at any agreement or understanding as to the nature of the transaction.

## III. REIMBURSEMENT FOR SEPARATE FUNDS

The first question we address is whether it was error to award judgment against the husband for the amount of $53,088.89 plus interest. The husband argues that there is no legal theory by which the wife can recover that total sum from him and urges this court to reverse the judgment. He attacks the judgment in several respects.

He argues first that the trial court's findings, conclusions and judgment, determining the payment of the FmHA debt to be a loan, are without any support in the record and are clearly erroneous. He next contends that, absent any agreement to the contrary between the parties, the most the wife would be entitled to recover is a return of the amount by which her funds increased the equity in the husband's farm property.[7] Finally, the husband asserts that if there is any support in the record for an alternative treatment of the FmHA payment, it would be either (a) under the doctrine of transmutation, i.e., that there was a transmutation of his separate interest in the farm into "jointly-owned" property; or (b) as performance by the wife of a pre-marital agreement, envisioning that, in exchange for the payment, the husband would care for the wife and her daughters if the wife's health problems worsened; or (c) that the funds expended by the wife for the benefit of the husband constituted a gift to him.

We are asked by the husband, in essence, to determine which legal principle most closely approximates the expectations of the parties in their transaction. So long as such an approach does not require us to weigh the evidence, to resolve conflicts in the evidence, to draw inferences or implications from the evidence, to form an opinion as to the relative credibility of the witnesses, or to make factual determinations different from those made by the trial judge, then we can determine the legal nature of the transaction between the parties. Such an approach would preserve well settled rules delineating the functions of the trial courts and the appellate court on review. I.R.C.P. 52(a). It must be kept in mind however, that the judgment of the trial

---

**6.** Apparently the parties had differing thoughts about why the wife's name should be placed on the deed. The husband testified, "Putting her name on the deed meant to me, it was protection to her in case something would happen to me." The wife testified as follows:

> Q. Was there any conversation between Rick [the husband] and you as you left the office of the F.H.A. [FmHA], upon writing that check, relative to your interest in the property?
> A. I was very upset. $53,000.00, I wasn't prepared for that at all. The one thing that Rick said to me as we left was, "How does it feel to own a farm in Jerome." At that time I didn't say anything. Later on, when we got home, I said to him then that I felt that it was time that we made a trip to an attorney and put my name on the deed to the farm.

> Q. What did you mean when you announced to him that your name should be put on the deed?
> A. I felt that I had replaced F.H.A. [FmHA] as his financer, and I needed some kind of security.
> Q. So you didn't mean that you intended to buy the farm from him?
> A. No, never.

**7.** The bulk of the FmHA payment was applied to accrued interest charges and to the operating expense loans. As a result only $4825.97 of the payment was applied to the principal of the loan obtained for the purchase of the farm, thereby increasing or enhancing the equity in the property by that amount.

court will be affirmed on appeal if it is capable of being upheld on any theory. *Berry v. Koehler,* 86 Idaho 225, 384 P.2d 484 (1963).

■ Also, where it is asserted, as in this case, that a spouse intended to transmute property or to make a gift, the burden is on the party urging the assertion to prove the intent in question by clear and convincing evidence. *Cf. Griffin v. Griffin,* 102 Idaho 858, 861, 642 P.2d 949, 952 (Ct.App. 1982) citing *Beam v. Bank of America,* 6 Cal.3d 12, 490 P.2d 257 (1971) (transmutation); *In Re Estate of Bogert,* 96 Idaho 522, 531 P.2d 1167 (1975) (gift). Concomitantly, because the question of whether a "clear and convincing" burden of proof has been met is a question for the trier of facts to decide in the first instance, the determination of the trial judge—that a claim was not shown by clear and convincing evidence—is entitled to great weight on appeal. *In Re Estate of Bogert, supra,* at 526, 531 P.2d at 1171.

### A. Loan.

■ It has been held, in Idaho, that when the funds of one spouse come into the hands of the other, and no gift or change in the status of the property is claimed, shown, or presumed, the presumption obtains that the funds continue to be separate property, held in trust by the recipient. *Gapsch v. Gapsch,* 76 Idaho 44, 51, 277 P.2d 278, 282 (1954), citing *Wilkerson v. Aven,* 26 Idaho 559, 144 P. 1105 (1914). *See also Stickney v. Stickney,* 131 U.S. 227, 238, 9 S.Ct. 677, 680, 33 L.Ed. 136 (1889).

■ It is further well established that where the separate funds of one spouse are used for the benefit of the community, such as payment of a debt arising from the acquisition of community property, the separate estate is entitled to reimbursement of the amount expended, absent clear and convincing evidence that a gift of the separate funds was made or intended. *See In Re Estate of Freeburn,* 97 Idaho 845, 850, 555 P.2d 385, 390 (1976) and cases cited therein, especially *Gapsch v. Gapsch, supra.* We are not convinced that using the separate funds

of one spouse to discharge the separate debts of the other spouse should be treated any differently than where those separate funds are applied to community debts, in the absence of a gift.

Our determination is supported by decisions of other courts which have addressed disputes on facts similar to the instant case, holding that alternative presumptions of either a trust or a loan may exist. *Cf. Allen v. Allen,* 123 So.2d 355 (Fla.Ct.App.1960) (where a husband receives or acquires possession of his wife's separate property, the law will presume that the property is held in trust for the wife's benefit, or that a loan exists); *Van Inwegen v. Van Inwegen,* 4 N.J. 46, 71 A.2d 340 (1950) (where a wife advances money from her separate estate to her husband there is no presumption that such a transaction constitutes a gift, but the presumption is that the advancement is a loan or a deposit for safe keeping, i.e., a trust); *Long v. Eddleman,* 22 N.C.App. 43, 205 S.E.2d 598 (1974) (in the absence of proof that a gift was intended, it is presumed that there was a loan where the husband receives and uses his wife's money to acquire property, which is not otherwise shown to have been acquired in co-tenancy).

The California Supreme Court has held that the payment of the husband's debts with the separate property of his wife is presumed to be a loan and not a gift. *In Re Abdale's Estate,* 28 Cal.2d 587, 170 P.2d 918 (1946). Similarly, a lower California appellate court, citing *Abdale's Estate,* held that "[t]he advancement of separate funds by a wife to her husband for investment in his separate property is presumed to be a loan, 'and imposes upon him the legal duty of returning it to her'." *In Re Bishop's Estate,* 209 Cal.App.2d 48, 25 Cal.Rptr. 763, 767 (1962).

■ From the best reasoned authorities, we conclude that where a spouse holds, controls, or manages the separate estate of the other spouse for no specific or particular purpose, presumptively the property is held in trust for the other's benefit; but where the spouse who receives the funds

uses them to pay his own debts, or to invest in his own separate property, a loan of the funds to that spouse is presumed.

The effect of a presumption of trust or of loan is to impose a burden of proof upon the person who claims the transaction was not a loan or trust. *Allen v. Allen, supra.* Whether the husband here satisfied his burden to overcome the presumption of a loan, was a question in the first instance for the trial court to decide. The determination of the magistrate that the transaction between the parties constituted a loan of the wife's funds for the benefit of the husband was a permissible inference to be derived from the facts presented at trial. From our review of the record we cannot conclude that the magistrate erred. We hold there was substantial and competent, although conflicting, evidence presented to support the magistrate's determination that the transaction between the parties constituted a loan. We turn now to alternative theories advanced by the husband, and explain why, in our view, they are unsatisfactory.

*B. Transmutation.*

Transmutation is a broad term used to describe arrangements between spouses which change the character of property from separate to community and vice versa. W. Reppy & W. deFuniak, Community Property in the United States 421 (1975). The husband argues that the evidence at trial, rather than supporting the conclusion that a loan occurred between the parties, supports a theory that the payment to FmHA "transmuted" the wife's separate funds into a form of jointly-owned interest in the farm.

We are not persuaded by the husband's argument. The doctrine of oral or informal transmutation has been rejected by this court. *Stockdale v. Stockdale,* 102 Idaho 870, 643 P.2d 82 (Ct.App.1982); *Griffin v. Griffin, supra.* Furthermore, there is no evidence in the record upon which the magistrate could have found that the formalities required for transmutation of the husband's farm (real property) from separate property to community property, to jointly owned property, or to a separate interest in the wife had been followed. *See Stockdale,* 102 Idaho at 872–73, 643 P.2d at 84–85. Although the magistrate did not make a specific finding or conclusion that no transmutation had occurred, his finding and conclusion characterizing the transaction as a loan implicitly indicates that he was not persuaded by the transmutation theory. We hold the magistrate did not err in failing to find that a transmutation had occurred as a result of the transaction between the parties.

*C. Pre-Marital Agreement.*

The husband next argues that, rather than establishing a loan, the evidence could support a finding that the arrangement between the parties represented performance of a pre-marital contractual relationship. He asserts that the wife paid the loan to FmHA in exchange for the husband's promise to marry her and care for her daughters. He suggests that the subsequent marriage and payment to FmHA rendered the premarital contract an accomplished fact.

We cannot accept the husband's contention in this regard. The determination of the existence of a sufficient meeting of the minds to form a contract is a question of fact to be determined by the trier of facts. *Shields and Co., Inc. v. Green,* 100 Idaho 879, 606 P.2d 983 (1980). Here there was no direct evidence that the parties entered into the agreement suggested by the husband. At best, as argued by the husband, the agreement may be inferred from the conduct of the parties. However, deriving that inference from the evidence is a function for the trial court, not for an appellate court. The trial court, as fact finder, did not determine that the monies used to pay the debt owed to FmHA came as a result of a pre-marital agreement; rather, the court concluded from the evidence that the transaction was a loan from the wife to the husband.

The magistrate's finding of a loan should be reviewed in light of the "clearly errone-

ous" standard enunciated in I.R.C.P. 52(a). The correlative rule of substantial and competent evidence cannot be so applied where, as here, the finding in question goes to the lack of evidence—i.e., that the husband failed to prove the existence of a pre-marital contract. See *Viehweg v. Thompson*, 103 Idaho 265, 647 P.2d 311 (Ct.App.1982).

The evidence in the record, on the issue of whether a pre-marital contract existed as asserted by the husband, is vague, inconclusive and contradictory. We hold that the magistrate's determination of a loan, to the exclusion of a pre-marital contract, was not clearly erroneous. I.R.C.P. 52(a).

### D. Gift.

The husband next argues that the evidence could support a finding that the payment to FmHA constituted a gift from the wife to him and, therefore, the magistrate erred in concluding that the payment constituted a loan between the parties. Whether a transfer of property from one spouse to the other is in the nature of a loan or a gift is a question of fact. *McGrew's Estate v. Commissioner*, 135 F.2d 158 (6th Cir.1943); *In Re Marriage of Frapwell*, 49 Cal.App.3d 597, 122 Cal.Rptr. 718 (1975); *Glover v. Summerour*, 165 Ga. 513, 141 S.E. 211 (1928); *Newell v. Newell's Estate*, 198 Iowa 710, 200 N.W. 238 (1924); *Roethemeier v. Veith*, 334 Mo. 1030, 69 S.W.2d 930 (1934); *Parker v. Staley*, 21 S.W.2d 200 (Mo.App.1929); *Ralls v. Ralls*, 256 S.W. 688 (Tex.Civ.App.1923).

As noted earlier, the party who asserts that a transaction amounted to a gift has the burden of proving the elements of a gift by clear and convincing evidence. Here the evidence and inferences therefrom conflicted as to whether the use of the wife's funds to pay the FmHA debts represented a gift to the husband. Contrasted with the argument of the husband that a gift could be inferred from the conduct of the parties, there is the direct testimony of the wife that she did not intend to make a gift of her money to the husband, when it was used to pay his debts. In the record also, is the testimony of the husband that,

upon payment of the FmHA debt, the parties discussed placing the wife's name on the deed to the farm as "protection to her in case something would happen to me." Planning to add the wife's name on the title to the property—resulting in either an ownership or security interest therein, in exchange for the use of her funds—arguably conflicts with evidence that a gift to the husband was intended.

As with the issue of pre-marital contract, discussed above, the evidence in the record concerning a gift was contradictory and inconclusive. The finding by the magistrate of a loan was a permissible inference to be drawn from the evidence. This finding goes to the lack of evidence—i.e., that the husband failed to prove, by clear and convincing evidence, that a gift was made or intended. We cannot say that the determination of the magistrate was clearly erroneous and hold the magistrate did not err in failing to conclude the transaction constituted a gift. I.R.C.P. 52(a).

### E. Enhancement of Equity.

The husband argues that, even if the wife is entitled to judgment against him, for recovery of funds used to pay FmHA, the amount recovered should be limited to $4825.97. He asserts that the wife can recover only the amount which can be "traced to identifiable assets"—the increase in his equity in the farm resulting from the reduction of the principle balance of his purchase loan. We disagree.

Not only was the husband's net equity in the property increased by the portion of the FmHA payment allocable to reduction of the principal of the purchase loan, but the husband's total net worth was also increased by reduction of his outstanding indebtedness, when the accrued interest charges and the delinquent operation-expense debts were paid.

The facts of this case support the magistrate's determination that the transaction constituted a loan between the husband and the wife. We hold the wife is entitled to recover the total amount of the

loan made by her to the husband for payment of his debts.

## IV. TRIAL DE NOVO

The husband also contends that the district court erred in the procedure employed for its review of this case on appeal from the magistrate division. The husband apparently was expecting that the appeal from the magistrate would be handled by the district court as a trial de novo, based on the fact that, at one point, the case was carried on the district court's trial calendar. The record discloses that no notice of trial setting was sent to either party or counsel, and that no order for a trial de novo was entered by the district court. Because a trial de novo was not held in district court, the husband argues that reversible error was committed by the district court.

I.R.C.P. 83 governs appeals from the magistrate division to the district court. Rule 83(j) specifies the means for determination of the appeal by the district judge assigned to review the magistrate's decision. A district judge is given the discretion to decide the case by the following means: either without ordering a transcript and without ordering a trial de novo; or by listening to the tape recording of the proceedings in the magistrate court; or by ordering a transcript of those proceedings and determining the case without a trial de novo; or by ordering a trial de novo. In the proceedings below, one district judge ordered that a transcript be prepared pursuant to I.R.C.P. 83(j)(2)(C). Sometime later the case apparently was assigned to another district judge. He so notified counsel and inquired whether appellate briefs were to be forthcoming and whether oral argument was desired. No timely affirmative response was made to these inquiries. The district judge, to whom the case was assigned for disposition, then did not order a trial de novo, see I.R.C.P. 83(j)(3)(D), but instead decided the case solely upon the record.

We hold that there was no error in the district judge's discretionary determination to hear the appeal on the record. The husband's counsel's belief—that a trial de novo was to be had—was misplaced in light of the obvious lack of any order to that effect. I.R.C.P. 83(j)(3)(D); I.R.C.P. 83(b).

## V. HOMESTEAD CLAIM and ATTORNEY'S LIEN

The wife cross-appeals, raising two issues. First, she contends the district court erred in refusing to grant her motion to set aside a claim of homestead filed by the husband against his farm. Second, she asserts the district court erred in allowing a lien claimed by the husband's attorney to be satisfied from the proceeds of a sale which had been conducted under a writ of execution issued on the judgment awarded to the wife by the magistrate. We agree that error occurred.

Both of these issues relate to enforcement of the wife's judgment for recovery of money loaned to the husband. The homestead claim apparently was asserted by the husband as an exemption to protect his equity in the farm from execution to collect on the judgment. See I.C. §§ 55–1001, 55–1004. The attorney's claim of lien was asserted against proceeds derived from a sale of personal property (cattle) belonging to the husband and apparently either awarded or confirmed to him in the divorce action. See I.C. § 3–205.

I.R.C.P. 83(i) provides that an appeal from the magistrate division to the district court shall not automatically stay the proceedings or prevent enforcement of any judgment, order or decision appealed from, but a stay may be obtained under I.R.C.P. 62 or I.A.R. 13. The record before us does not contain any order staying enforcement of the judgment entered by the magistrate following the appeal to the district court. The judgment therefore remained enforceable in the magistrate division while the appeal was pending in the district court. See cases collected at 4 Am. Jur.2d *Appeal and Error* § 360 (1962). The district judge refused to process the case as a trial de novo, but rather specifically ruled that he would determine the appeal as an

appellate court. Under these circumstances we hold that the district court did not have jurisdiction to entertain or to dispose of issues relating to the enforcement of the magistrate's judgment, either as to asserted claims of exempt property or to resolution of conflicting claims of right to the execution sale proceeds.

The determinations of the district court regarding the validity of both the claim of homestead and the attorney's lien are reversed. These disputed claims are remanded to the district court with instruction to further remand them to the magistrate for resolution.

Otherwise, the orders of the district court affirming the magistrate's judgment on appeal, and denying a trial de novo, are affirmed. Costs to the respondent, cross-appellant wife. No attorney fees on appeal.

SWANSTROM and BURNETT, JJ., concur.